# EXHIBIT D

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

OPULENT TREASURES, INC.,

       Plaintiff,

vs.

YA YA LOGISTICS, INC., HK JAYDEN
TRADING, LTD., VIVI SUO, an individual, and
WIN BEST IMPORT AND EXPORT, CO., LTD.,

       Defendants.

                               /

## COMPLAINT,
## PERMANENT INJUNCTIVE RELIEF REQUESTED,
## DEMAND FOR JURY TRIAL

Plaintiff Opulent Treasures, Inc. ("Opulent" or "Plaintiff") files this Complaint for damages and injunctive relief against Defendants Ya Ya Logistics, Inc., HK Jayden Trading, Ltd., individual Vivi Suo, and Win Best Import and Export, Co., Ltd.

## NATURE OF THE ACTION

1.    This is a civil action for trade dress infringement, trade dress dilution, false designation of origin, unfair competition, unjust enrichment, and request for injunctive relief arising out of Defendants' unauthorized and infringing use of Opulent's trade dress for cake stands and other décor items. As described more fully below, upon information and belief, Defendants have knowingly, willfully, or

intentionally infringed Opulent's trade dress, damaged Opulent's business reputation, and subjected Opulent to unfair competition, lost profits, and other monetary damages. The infringement is ongoing, causing Opulent to suffer irreparable harm.

## **PARTIES**

2.    Opulent is a corporation organized and existing under the laws of the state of California, with its principal place of business in El Segundo, California. It sells its products through its website www.opulentreasures.com as well as through other e-commerce platforms including Amazon.com, Wayfair.com, and eBay.com. It also sells its products to leading retail stores such as TJX Corp., including its affiliates Home Goods, TJ Maxx, Marshalls, Winners, Home Sense Canada and TK Maxx Europe. Opulent is and has been marketing and selling Opulent's Designs[1] in Florida and throughout the United States in interstate commerce continuously.

3.    On information and belief, Defendant Ya Ya Logistics, Inc. is a corporation organized and existing under the laws of the state of Florida, with its principal place of business at 2020 W. 26th St., Jacksonville, FL 32209.

4.    On information and belief, Defendant HK Jayden Trading, Ltd. ("HK Jayden"), is a business entity formed and headquartered in China, with its principal

---

[1] Opulent's Designs mean federally and common law protected trade dresses which Defendants infringe.

place of business at Rooms 1318-19, 610 Nathan Rd, Mong Kok, Kowloon, Hong Kong, China.

5.     Defendant Vivi Suo is an individual that can be served with process at her place of business at Rooms 1318-19, 610 Nathan Rd, Mong Kok, Kowloon, Hong Kong, China. On information and belief, Defendant Vivi Suo is an owner of Defendant HK Jayden. On information and belief, Defendant Vivi Suo controls the actions of HK Jayden and directed the infringing and wrongful conduct at issue in this complaint.

6.     On information and belief, Defendant Win Best Imports and Exports Co., Ltd., ("Win Best") is a business entity formed and headquartered in China, with its principal place of business at Room 2816, Building 1, ARC Central Plaza, No. 88, Shinianpan Street, Shapingba District, Chongqing City, China.

7.     Defendants are the manufacturers, sellers, or distributors of cake stands and other décor items which are infringing on Opulent's Designs.

8.     Defendants sell their infringing products in this District and throughout the United States.

## JURISDICTION AND VENUE

9.     This Court has subject-matter jurisdiction over all aspects of this action under 17 U.S.C. §101 et seq. ("Copyright Act"), 15 U.S.C. § 1051 et seq. ("Lanham Act") and 28 U.S.C. §§ 1331, 1337, and 1338.

10.    This Court has pendent jurisdiction over the Florida common law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the other claims in the action over which the Court has original jurisdiction that they form part of the same case or controversy.

11.    This Court has personal jurisdiction over Defendant Ya Ya Logistics, Inc. because Defendant Ya Ya Logistics, Inc. is incorporated in the State of Florida and its principal place of business is in this judicial district and Defendant Ya Ya Logstics, Inc. has committed acts of trademark infringement and related wrongful conduct, including distributing infringing products, within this judicial district.

12.    This Court has personal jurisdiction over Defendants HK Jayden and Win Best through those defendants transacting, doing, and soliciting business in this District, because a substantial part of the relevant events occurred in this District, and because Defendants have infringed, contributed to the infringement of, or actively induced others to infringe Opulent's Designs in this District. Defendants HK Jayden and Win Best have both shipped thousands of infringing products, worth tens of thousands of dollars, to Defendant Ya Ya Logistics, Inc. in Jacksonville, Florida, within this District.[2] Defendants continue to infringe Opulent's Designs in

---

[2] *See e.g. D.W. Mercer, Inc. v. Valley Fresh Produce, Inc.*, 146 F. Supp. 2d 1274, 1277 (M.D. Fla. 2001) ("Delivery of 1,000 packages of strawberries allegedly containing the trade marks at issue into the Middle District of Florida is enough to find the corporation committed a tortious act within Florida.").

this District. Defendants have purposefully availed themselves of the privilege of conducting business in this District. Because the Defendants voluntarily engaged in tortious acts in this District and made purposeful contacts with this District, the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.

13.     The Court has personal jurisdiction over individual Defendant Vivi Suo because Defendant Vivi Suo is the primary participant in HK Jayden's infringement of Opulent's intellectual property. Vivi Suo has been actively and personally involved in the sale of Accused Products by being actively involved in the decisions to begin selling the infringing products and the distribution and sale of those products into Florida and elsewhere in the United States through Ya Ya Logistics, Inc. Vivi Suo's involvement extends beyond merely acting as an agent for Defendant HK Jayden. On information and belief, Vivi Suo has been involved as the de facto buyer for Ya Ya Creations, Inc.[3], a California company that utilizes Ya Ya Logistics, Inc. to distribute infringing products. Suo has accomplished this through her relationship with her sister, Nan "Annie" Suo, who is the buyer for Ya Ya Creations, Inc. Annie Suo introduced Mitchell Su, CEO of both Ya Ya Creations, Inc. and Ya Ya Logistics, Inc., to Defendant HK Jayden. These individuals have a further

---

[3] Litigation is already pending in the Central District of California against Ya Ya Creations, Inc.

personal relationship in that Annie Suo is married to Mitchell Su. Vivi Suo has personally benefitted from the sale of infringing products.

14.    Venue is proper under 28 U.S.C. §§ 1391(b)-(c) and 1400(a) because Defendants transact business in this District, a substantial part of the events or omissions giving rise to the claims alleged occurred in this District, Opulent has been injured in this District, and, under 28 U.S.C. § 1400(b), Defendants committed acts of infringement in this District.

## FACTS SUPPORTING CLAIMS

### A. The Opulent Brand and Opulent Trade Dress

15.    Since 1995, Opulent has been engaged in the design, distribution, marketing, offering for sale, and sale of elegantly and uniquely crafted entertainment and home décor pieces, including, but not limited to, chandelier dessert stands, candelabras, and lamps. In creating its products, Opulent has always sought to add charm, elegance, and stunning beauty to each customer's special occasions and celebrations.

16.    Opulent is the creator of the "Chandelier Cake Stand," "Chandelier Cupcake Holder," "Chandelier Candle Holder" and many other distinct trade dresses, all protected under federal or common trademark law (collectively "Opulent's Trade Dress"). These products did not exist before Opulent introduced them to the marketplace.

17.     Since its founding, the popularity of Opulent's Trade Dress has steadily grown throughout the United States. Its unique decorative pieces are coveted by wedding and event planners as well as individual consumers looking to bring a sophisticated look to their events, gatherings, and homes.

18.     In recent years, Opulent's commitment to quality and beauty has helped propel the Opulent Treasures® brand to an overwhelming level of popularity among consumers. After more than twenty years of business, Opulent's loyal customer base spans not only across the United States, but the entire globe.

19.     In fact, just through the trend-ideas sharing website, www.Pinterest.com, Opulent's "pins" have engaged with nearly thirty million individuals. Additionally, Opulent has received unsolicited media attention several times from outlets including Romantic Homes, Buzzfeed, Prime Living, C Magazine, U.S. Weekly, among others. Opulent's products have also been featured on multiple television networks, including QVC, Bravo, Nickelodeon, HGTV, as well as on programs such as the Today Show, The Real Housewives, Keeping Up with The Kardashians, and Vanderpump Rules.

20.     At first serving specialty stores, boutiques, and event planners, Opulent has grown into a multi-million-dollar business, shipping up to 40,000 pieces per month, and experiencing sales around $3 million per year via TJX Corp., including its affiliates Home Goods, TJ Maxx, and Marshalls.

21.     Opulent's products are distributed and sold to consumers through authorized retailers throughout the United States, including Florida, at point-of-sale on the Internet (e-commerce platforms such as Wayfair, Houzz, Amazon, and QVC), and through its own website www.opulenttreasures.com.

22.     Opulent has also been enrolled on the Amazon Brand Registry since June 2017 to identify its registrations and trademark rights.

23.     Opulent has acquired trade dress rights under the Lanham Act, as well as under state statutory and common law, in the overall look, design, arrangement, and appearance of its cake stands and other décor items.

24.     In connection with some of its best-selling products, Opulent has used a variety of legally protected trademarks on and in connection with the advertisement and sale of its products, including, but not limited to, those detailed in this Complaint.

25.     Opulent owns trademarks for Opulent's dessert table, tiered dessert stand, and candelabra which are registered in the U.S. Trademark Office (Reg. Nos. 5,912,235; 4,729,340; 4,729,341; and 4,733,374) (collectively, "Opulent's 3D Marks").

26.      Opulent also owns a literary mark for OPULENT TREASURES® (Reg. No. 4,381,949).

27.    Opulent's 3D Marks are identified and described below in **Table 1**, below. The designs depicted below consist of non-functional design elements, are not essential to the use or purpose of the products, do not affect their cost or quality, and are not the reason the products work. Moreover, the ornamental aspects of the arrangement and combination of the features are arbitrary and non-functional.

| REG. NUMBER | TRADEMARK | REG. DATE | FIRST USE IN COMMERCE | GOODS |
|---|---|---|---|---|
| 5,912,235 (Principal Reg.) |  | November 19, 2019 | August 2006 | IC 021: Dessert serving trays, tiered serving trays for domestic purposes; tiered tray serving platters |
| 4,729,340 (Supp. Reg.) |  | April 28, 2015 | August 2006 | IC 021: Dessert serving trays, tiered serving trays for domestic purposes; tiered tray serving platters |
| 4,729,341 (Supp. Reg.) |  | April 28, 2015 | August 2006 | IC 020: Tables, Display tables, tables for displaying desserts |

| REG. NUMBER | TRADEMARK | REG. DATE | FIRST USE IN COMMERCE | GOODS |
|---|---|---|---|---|
| 4,733,374 (Supp. Reg.) |  | May 5, 2015 | August 2006 | IC 021: Candle holders; Non-electric candelabras |

28.     Opulent is the exclusive licensee of Opulent's Designs and Opulent's 3D Marks. The key to Opulent's success is the high quality and reputation of its products, which are closely associated by the public with Opulent's Designs. Opulent has used Opulent's Designs continuously as the main identifier of its elegant and distinct décor pieces.

29.     Opulent has extensively and continuously promoted and used its trade dress designs for years in the United States and in Florida, and as explained in more detail below, has acquired trade dress rights in its designs. In connection with marketing and selling Opulent's Designs, Plaintiff has extensively used, displayed, and advertised the non-functional features of Opulent's Designs that comprise the trade dresses of said designs. In the minds of the public, the primary significance of these non-functional and distinctive features is to identify the source of the product, and Opulent Designs have acquired secondary meaning. The distinctive and non-

functional features also identify that the product is reliable and of the high quality associated with Opulent.

30.     Opulent's products, depicted in **Table 2** below, are Opulent's most recognizable trade dresses. For example, one of the most iconic is "Chandelier Cake Stand," federally protected by U.S. Reg. No. 5,912,235. Said Chandelier Cake Stand consists of a decorative display table embodying these features: ornate paneling surrounding the circumference of the tabletop; beads and crystals encircling the table and dangling from the ornate paneling; and a multi-grooved fluted base. The ornate paneling with or without jewels that is part of Opulent's chandelier design is what makes Opulent's trade dress recognizable to consumers. Customer's associate this distinctive design with Opulent's recognized quality.



Chandelier Round Cake Stand
Reg No. 5,912,235

Chandelier Square Cake Stand



Chandelier Candle Holder
Reg No. 4,733,374

Chandelier Cupcake Stand
Reg No. 4,729,340

31.     Additionally, Opulent's Designs have become famous and a well-known indicator of the origin and quality of Opulent's décor products. As explained above, Opulent has used, promoted, marketed, and made significant sales of its designs.

32.     Attached as Exhibit A is a copy of the Certificates of Registration for Opulent's 3D Marks and OPULENT TREASURES® literary mark along with a current printout of the electronic status page for these registrations downloaded from the USPTO database at http://tsdr.uspto.gov.

33.     According to 15 U.S.C. §§ 1115(a) and 1057(b), Opulent's U.S. Reg. No. 5,912,235 is prima facie evidence of the validity of Opulent's trade dress in Opulent's Chandelier Cake Stand.

34.     According to 15 U.S.C. §§ 1115(a) and 1057(b), Opulent's Chandelier Cake Stand registration is prima facie evidence of Opulent's ownership of the Opulent trade dress.

35.     According to 15 U.S.C. §§ 1115(a) and 1057(b), Opulent Chandelier Cake Stand registrations is prima facie evidence of Opulent's exclusive right to use the Opulent trade dress in the United States commerce.

36.     Together with the rights granted by Opulent's 3D Marks, Plaintiff has strong common law rights in its trade dresses (Opulent's Designs depicted in **Illustration 1**) through its extensive use and promotion of them in commerce. Opulent is and has been marketing and selling Opulent's Designs in Florida and in this District at nearly a hundred brick-and-mortar locations in Florida as well as across the United States in stores such as TJ Maxx, Home Goods, Marshalls, and through e-commerce distributors. Opulent has also been diligent in protecting and enforcing Opulent's Designs.

37.     Opulent's Designs serve as a unique source identifier for Opulent's products. Opulent has invested time, effort, and hundreds of thousands of dollars in marketing to build the fame, reputation, and goodwill of Opulent's Designs.

38.     Opulent's Designs are distinctive designations of the source of origin of its products.

39.    Opulent's Designs are uniquely associated with Plaintiff and its high-quality goods. These trade dresses are assets of incalculable value as symbols of Opulent, its quality of goods and its goodwill. These trade dresses have acquired secondary meaning and have become famous in the United States, in Florida, and in this District.

40.    Opulent's Designs are well-known and were well-known *before* Defendants' infringement began.

41.    As a result of Opulent's extensive advertising and promotional efforts and its continuous use, Opulent's Designs are distinctive and widely recognized by the relevant consuming public of Florida and the United States as a designation of source of the involved goods. As a result, Opulent owns federal, common law, and statutory trade dress rights in ornamental design and appearances of all Opulent's Designs.

42.    Opulent also has registered copyrights for several of its creations, (the "Opulent Copyrights"). These include the copyright registrations VA 2-298-980 for its Round Cake Stand, VA 2-299-360 for its Chandelier Cupcake Cake/Cupcake/Desert Stand, VA 2-299-364 for its Chandelier Cupcake Stand, VA 2-299-366 for its 3 Tier Chandelier Dessert Stand, VA 2-304-222 for its Set of 3 Square Chandelier Dessert Stand, VA 2-308-419 for its Round Cake Stand with Crystals, and VA 2-309-157 for its Moroccan Jeweled Cake Stand Set.

43.     The works protected by Opulent Copyrights are depicted in **Table 3** below.



| | | | |
|---|---|---|---|
| VA 2-298-980 | VA 2-299-360 | VA 2-299-364 | VA 2-299-366 |
| VA 2-304-222 | VA 2-308-419 | VA 2-309-157 | |

44.     Attached as Exhibit B is a copy of the Certificates of Registration for the Opulent Copyrights.

### B. DEFENDANTS' INFRINGEMENT OF OPULENT'S DESIGNS

45.     Defendants have purposefully offered for sale, sold, distributed, imported and/or re-sold, advertised, marketed, or promoted, and continue to offer for sale, sell, distribute, import and/or re-sell, advertise, market, or promote

household products known as: CHDLR_045_GOLD; CHDLR_046_GOLD; CHDLR_CAKE02_GOLD; CHDLR_CAKE01_GOLD; CHDLR_CAKE03_GOLD; CHDLR_CAKE04_GOLD; and CHDLR_CAKE05_8_GOLD; ("the Accused Products")[4] that are confusingly similar to, and dilute, Opulent's Designs. Defendants' use Opulent's Designs in commerce without Opulent's authorization. Furthermore, in an unsophisticated manner, Defendants have combined elements from several of Opulent's Designs or arranged Opulent's Designs in new a configuration to conceal flagrant infringement.

46.   The confusing similarity between the Opulent Designs (right) and Accused Products (left) is shown, for example, in **Illustration 1** below:



| ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|
| CHDLR_045_GOLD,<br>CHDLR_045_SILV,<br>CHDLR_045_054 | OT1172<br>Trademark Reg No.: 5,912,235<br>Copyright Reg. No.: VA 2-308-419 |

---

[4] Product numbers for known color variations of the Accused Products are listed within Illustration 1.

| ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|
|  CHDLR_046_GOLD, CHDLR_046_SILV, CHDLR_046_054 | OT1739 |

| ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|



CHDLR_CAKE02_GOLD,
CHDLR_CAKE02_SILV,
CHDLR_CAKE02_054,
CHDLR_CAKE02_WHT

OT1769

OT898
Copyright Reg. No.: VA 2-304-222

OT899

| ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|
| <br><br>CHDLR_CAKE01_GOLD,<br>CHDLR_CAKE01_054,<br>CHDLR_CAKE01_WHT | <br>OT898<br>Copyright Reg. No.: VA 2-304-222<br><br><br>OT899 |

| ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|
| CHDLR_CAKE03_GOLD, CHDLR_CAKE03_WHT, CHDLR_CAKE03_BLK, CHDLR_CAKE03_SILV, CHDLR_CAKE03_054 | OT1703 |

| ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|
|  CHDLR_CAKE05_8_GOLD, CHDLR_CAKE05_8_SILV, CHDLR_CAKE05_8_WHT, CHDLR_CAKE05_8_054 |  OT1540  OT1371 Copyright Reg. No.: VA 2-309-157 |



| ACCUSED PRODUCTS | OPULENT'S DESIGNS |
|---|---|
| CHDLR_CAKE04_WHT; CHDLR_CAKE04_GOLD | OT836 Copyright Reg. No.: VA 2-299-364 OT1107    OT1671 OT1007 |

47.     Defendants supply home décor and wholesale party supplies for events.

Upon information and belief, Defendants, or their affiliates, import and/or re-sell the

Accused Products into the United States and distribute them to customers, whether retail stores across the country or individuals who purchase the products from online stores. At these retail and online stores, the Accused Products are advertised, promoted, offered for sale, and sold. Upon information and belief, customers have bought the Accused Products from one or more stores to which Defendants directly or through the third party distributes the Accused Products.

48.     The Accused Products also are advertised, promoted, offered for sale, sold, and transported to customers across the United States, including throughout this District.

49.     Defendants are not licensed to use Opulent's Designs and have no other affiliation with Opulent. Defendants are also direct competitors with Opulent in the selling of home décor pieces.

50.     Defendants' intentional conduct is likely to cause confusion, to cause mistake, or to deceive the public and the trade by causing consumers to believe that Defendants' products originate with, or relate to, Opulent's goods, or are licensed by, sponsored or approved by, connected with, or associated with Opulent.

51.     Defendants' use of Opulent's Designs has caused, and will continue to cause, harm to Plaintiff.

52.     As discussed below, through these activities related to the Accused Products, Defendants infringe Opulent's trade dress rights, engage in unfair

competition against Opulent, are unjustly enriched at Opulent's expense, and engage in misappropriation.

## COUNT I
### (Federal Copyright Infringement under 17 U.S.C. § 501(a))

53.     All of the above paragraphs are incorporated by reference as if fully restated.

54.     Plaintiff is the exclusive owner of the Opulent Copyrights in Opulent's 3D Works.

55.     Defendants had actual notice of Plaintiff's exclusive rights in and to the Opulent Copyrights.

56.     Defendants did not attempt, and therefore inherently failed, to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market the Opulent Copyrights.

57.     Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the Opulent Copyrights by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling infringing products which bear the Opulent Copyrights, or artwork that is, at a minimum, substantially similar to the Opulent Copyrights.

58.     Defendants' unlawful and willful actions as alleged herein constitute infringement of the Opulent Copyrights, including Plaintiff's exclusive rights to reproduce, distribute and/or sell the Opulent Copyrights in violation of 17 U.S.C. § 501(a).

59.     Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount yet unknown but to be proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Defendants will continue to cause substantial and irreparable harm to Plaintiff.

60.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, Plaintiff's actual damages, and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement.

## COUNT II
### (Federal Trademark Infringement Under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))

61.     All of the above paragraphs are incorporated by reference as if fully restated.

62.     Opulent is the exclusive owner of all right and title to its 3D Marks.

63.     Opulent's 3D Marks are inherently distinctive and continue to acquire substantial distinctiveness and goodwill in the marketplace through Opulent's use of

those trade dresses in commerce. As a result of Opulent's widespread and continuous use of its trade dresses, Opulent's 3D Marks have become associated in the minds of the relevant purchasing public with Opulent. The reputation and goodwill that Opulent has built up in Opulent's 3D Marks is of great value to Opulent.

64.    In particular, Defendants' use of Chandelier Cake Stand which U.S. Registered mark, Reg. No. 5,912,235 as described above, unless enjoined by the Court, is likely to cause confusion with, or to cause mistake or deceive consumers as to the origin, sponsorship, or approval of, Defendants' services, products, and related commercial activities, or Opulent's services, products, and commercial activities, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

65.    Defendants' infringement of Opulent's Chandelier Cake Stand mark, and the Defendants' other actions as pleaded above, are willful, intentional, and deliberate.

66.    Defendants' unlawful conduct has caused and will continue to cause substantial injury to the public and to Opulent.

67.    The intentional and knowing nature of Defendants' trademark infringement renders this case an exceptional case, entitling Opulent to an award of costs and reasonable attorney's fees under 15 U.S.C. § 1117(a).

68.    Opulent has no adequate remedy at law.

69.    By their conduct, Defendants have violated Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

70.    Opulent has a right to recover Defendants' profits, damages sustained by Opulent in an amount to be proven at trial, enhanced damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114 and 1117.

## COUNT III
### *(Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35])*

71.    All of the above paragraphs are incorporated by reference as if fully restated.

72.    Opulent is the exclusive owner of all right and title to the 3D Marks.

73.    Opulent has continuously used the 3D Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as Exhibit B.

74.    Without Opulent's authorization or consent, and with knowledge of Opulent's well known and prior rights in its 3D Marks and that Defendants' Accused Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the 3D Marks Registrations and/or used spurious designations that are identical with, or indistinguishable from, Opulent's 3D Marks or in connection with the manufacturing, importing, exporting, advertising, marketing,

promoting, distributing, displaying, offering for sale and/or sale of Accused Products.

75.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Accused Products to the purchasing public in direct competition with Opulent, in or affecting interstate commerce, and/or have acted with reckless disregard of Opulent's rights in and to Opulent's 3D Marks through their participation in such activities.

76.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of Opulent's 3D Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Accused Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Accused Products, and is likely to deceive consumers, the public and the trade into believing that the Accused Products sold by Defendants originate from, are associated with or are otherwise authorized by Opulent, thereby making substantial profits and gains to which they are not entitled in law or equity.

77.     Defendants' unauthorized use of Opulent's 3D Marks on or in connection with the Accused Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Opulent 3D Marks.

78.     Defendants' actions constitute willful counterfeiting of Opulent's 3D Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

79.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Opulent, its business, its reputation and its valuable rights in and to the 3D Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Opulent has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Opulent and its valuable 3D Marks.

80.     Based on Defendants' actions as alleged herein, Opulent is entitled to injunctive relief, damages for the irreparable harm that Opulent has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages

of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

## COUNT IV
### *(Trade Dress Infringement Under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))*

81.     All of the above paragraphs are incorporated by reference as if fully restated.

82.     Defendants' advertisements, promotions, offers to sell, sales, distribution, manufacture, importing and/or re-selling of the Accused Products violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by infringing Opulent's Designs. The trade dress of the Accused Products is confusingly similar to Opulent's Designs. Defendants' use of Opulent's Designs in the Accused Products is likely to cause confusion as to the affiliation, connection, or association of Defendants with Opulent as to the origin, sponsorship, or approval of the Accused Products, at least by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Opulent.

83.     Opulent's Designs are entitled to protection under the Lanham Act. Opulent's Designs include unique, distinctive, and non-functional designs. Opulent has extensively and continuously promoted and used its trade dresses in the United States. Through that extensive and continuous use, Opulent Designs have become a

well-known indicator of the origin and quality of Opulent's products, and Opulent's Designs have acquired substantial secondary meaning in the marketplace.

84.    Moreover, Opulent's Designs acquired this secondary meaning before Defendants began their unlawful use of Opulent's Designs in connection with the Accused Product. Opulent used its trade dresses extensively and continuously before Defendants began advertising, promoting, selling, offering to sell, distributing, importing and/or re-selling the Accused Products. Opulent's Designs acquired secondary meaning in the United States, in Florida generally, and in this District before Defendants started unlawful use of Opulent's Designs.

85.    Defendants' use of Opulent's Designs has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Opulent for which Opulent has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Opulent's Designs, with Opulent, and Opulent's products. Additionally, Defendants' use of Opulent's Designs has caused injury to Opulent in the form of lost sales because some customers that would have bought Opulent's Designs have bought and will buy Defendants' Accused Products instead.

86.    On information and belief, Defendants' use of Opulent's Designs has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Products to Opulent's Designs, as shown by, for

example, **Illustration 1** above, and by Defendants' continuing disregard for Opulent's rights.

87.    Opulent is entitled to injunctive relief, and Opulent has a right to recover at least Defendants' profits, Opulent's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT V
### *(Common Law Trade Dress Infringement)*

88.    All of the above paragraphs are incorporated by reference as if fully restated.

89.    Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, importing and/or re-selling of the Accused Products, in direct competition with Opulent, constitute common law trade dress infringement, because Defendants' use of Opulent's Designs is likely to cause consumer confusion as to the origin or sponsorship or affiliation of the Accused Products by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Opulent.

90.    Opulent's Designs are entitled to protection under the common law. Opulent's Designs includes unique, distinctive, and non-functional designs. Opulent has extensively and continuously promoted and used its trade dresses in the United States and Florida. Through that extensive and continuous use, Opulent's Designs

have become a well-known indicator of the origin and quality of Opulent's products, and Opulent's Designs have acquired substantial secondary meaning in the marketplace. Moreover, Opulent's Designs acquired this secondary meaning before Defendant began their unlawful use of Opulent's Designs in connection with the Accused Products.

91.     Defendants' use of Opulent's Designs has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Opulent for which Opulent has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation for quality associated with Opulent's Designs, with Opulent, and Opulent's products. Additionally, Defendants' use of Opulent's Designs has caused injury to Opulent in the form of lost sales because some customers that would have bought Opulent's Designs have bought and will buy Defendants' Accused Products instead.

92.     On information and belief, Defendants' use of Opulent's Designs has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Products to Opulent's Designs, as shown in, for example, **Illustration 1** above, and by Defendants' continuing disregard for Opulent's rights.

93.     Opulent is entitled to injunctive relief, and Opulent is also entitled to recover at least Opulent's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## COUNT VI
### *(Unfair Competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))*

94.     All of the above paragraphs are incorporated by reference as if fully restated.

95.     Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, importing and/or re-selling of the Accused Products, in direct competition with Opulent, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and constitute unfair competition because Defendants have obtained an unfair advantage as compared to Opulent through Defendants' use of Opulent's Designs and because such uses are likely to cause consumer confusion as to the origin or sponsorship or affiliation of Defendants' Accused Product, at least by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Opulent. Defendants' tortious activities have interfered with Opulent's ability to conduct its business.

96.     Opulent's Designs are entitled to protection under the Lanham Act. Opulent's Designs includes unique, distinctive, and non-functional designs. Opulent has extensively and continuously promoted and used its trade dresses in the United States. Through that extensive and continuous use, Opulent's Designs has become a

well-known indicator of the origin and quality of Opulent's products. Opulent's Designs have acquired substantial secondary meaning in the marketplace. Moreover, Opulent's Designs acquired this secondary meaning before Defendant started their unlawful use of Opulent's Designs in connection with the Accused Products.

97.     Defendants' use of Opulent's Designs has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Opulent for which Opulent has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Opulent's Designs, with Opulent, and Opulent's products. Additionally, Defendants' use of Opulent's Designs has caused injury to Opulent in the form of lost sales because some customers that would have bought Opulent's Designs have bought and will buy Defendants' Accused Products instead.

98.     On information and belief, Defendants' use of Opulent's Designs has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Products to Opulent's Designs, as shown by, for example, **Illustration 1** above, and by Defendants' continuing disregard Opulent's rights.

99.     Opulent is entitled to injunctive relief, and Opulent is also entitled to recover at least Defendants' profits, Opulent's actual damages, enhanced damages,

costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## COUNT VII
### *(Common Law Unfair Competition)*

100.   All of the above paragraphs are incorporated by reference as if fully restated.

101.   Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, importing and/or re-selling of the Accused Products, in direct competition with Opulent, constitute common law unfair competition by palming off and passing off of Defendants' goods, by simulating Opulent's Designs in an intentional and calculated manner likely to cause consumer confusion as to origin or sponsorship or affiliation of the Accused Products, by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Opulent. Defendants' tortious activities have interfered with Opulent's ability to conduct its business.

102.   Opulent's Designs are entitled to protection under the common law. Opulent's Designs include unique, distinctive, and non-functional features and are inherently distinctive. Opulent has extensively and continuously promoted and used Opulent's Designs for years in the United States and Florida. Through that extensive and continuous use, Opulent's Designs have become a well-known indicator of the origin and quality of Opulent's products, and Opulent's Designs have acquired

substantial secondary meaning in the marketplace. Moreover, Opulent's Designs acquired this secondary meaning before Defendants began their unlawful use of Opulent's Designs in connection with the Accused Product.

103.   On information and belief, Defendants' use of Opulent's Designs has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Opulent for which Opulent has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Opulent's Designs, with Opulent, and Opulent's products. Additionally, Defendants' use of Opulent's Designs has caused injury to Opulent in the form of lost sales because some customers that would have bought Opulent's Designs have bought and will buy Defendants' Accused Products instead.

104.   On information and belief, Defendants' use of Opulent's Designs has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Products to Opulent's Designs, as shown by, for example, **Illustration 1** above, and by Defendants' continuing disregard for Opulent's rights.

105.   Opulent is entitled to injunctive relief, and Opulent is also entitled to recover at least Opulent's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## APPLICATION FOR PERMANENT INJUNCTION

106.   All of the above paragraphs are incorporated by reference as if fully restated.

107.   The harm to Opulent arising from Defendants' acts are not fully compensable by money damages.

108.   On information and belief, Defendants, unless enjoined, will continue to misrepresent to or mislead the public into believing that their products and services are sponsored by, approved by, affiliated with, associated with, or originated by Opulent and infringe Opulent's Designs by using Opulent's famous trade dress or confusingly similar variations of them to identify Defendants' competitive products. All these actions violate the Lanham Act.

109.   Under 15 U.S.C. § 1116(a), these actions entitle Opulent to a permanent injunction, upon hearing, enjoining Defendants and their officers, agents, servants, employees, franchisees, and attorneys, and all persons in active concert or in participation with Defendants from:

a.      Representing Defendants' services are in any way sponsored by, approved by, affiliated with, or originated by Opulent;

b.      Representing that Defendants are Opulent;

c.    Using any of Opulent's Designs or any confusingly similar variation of them, alone or combined with other designs or words, to market, advertise, or identify Defendants' products; and

d.    Otherwise competing unfairly with Opulent or injuring its business reputation in any manner.

110.   For these actions, there is no adequate remedy at law. Further, Opulent is substantially likely to prevail on the merits of these claims. The injury to Opulent greatly outweighs any injury to Defendants that the requested injunction may cause. The balance of hardships tips strongly in favor of Opulent. Finally, the injunction will not disserve the public interest. Thus, in addition to monetary relief, Opulent is also entitled to permanent injunctive relief against Defendants.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Opulent requests that this Court enter judgment in its favor and for relief against Defendants as follows:

A.    That the Court enter judgment that:

1.    Defendants engaged in copyright infringement in violation of 17 U.S.C. § 501(a).

2.    Defendants violated Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1);

3.      Defendants engaged in trademark counterfeiting in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

4.      Defendants infringed, engaged in false designation of origin, and unfair competition in violation of Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1);

5.      Defendants engaged in trademark infringement in violation of the statutory and common law; and

6.      Defendants engaged in unfair competition in violation of the common law.

B.      That the Court issue a permanent injunction restraining and enjoining Defendants, and all of its agents, servants, officers, employees, successors, and assigns, and all other persons or entities in active concert or participation with Defendants from:

1.      Selling, marketing, advertising, importing, or purchasing the counterfeit product (as this term is defined by § 1116(d)) and other Accused Products or colorable imitations thereof;

2.      Using any of Opulent's Designs and/or any other confusingly similar designation, alone or in combination with other words, phrases, symbols, or designs, as trademarks, trade names, domain name components

40

or otherwise, to market, advertise, or identify any Defendants' goods or services;

3.     Otherwise infringing on Opulent's Designs;

4.     Representing or taking any other action likely to cause confusion, mistake, or deception on the part of consumers as to the source or origin of Defendants' products or services or as to any authorization, sponsorship, approval, or affiliation relationship between Defendants and Opulent;

5.     Unfairly competing with Opulent in any manner whatsoever or otherwise injuring its business reputation in the manner complained of herein; and

6.     Engaging in assignments or transfers, formation of new entities or associations or utilization of any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (1) through (6) above.

7.     In accordance with 15 U.S.C. § 1125(b), issue an order barring importation of the Accused Product and/or colorable imitations thereof into the United States, and barring entry of the Accused Product and/or colorable imitations thereof into any customhouse of the United States.

C.      That the Court enter an order pursuant to 15 U.S.C. §§ 1116, 1118 requiring Defendants, their agents, servants, officers, employees, successors, and assigns, to destroy all Accused Products or colorable imitations thereof that are in Defendants' possession, custody, or control.

D.      That the Court enter an order, pursuant to 15 U.S.C. § 1116, requiring Defendants to file with the Court and serve upon Plaintiff within 30 days after the entry of each of the preliminary and permanent injunctions a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with Paragraphs B and C, *supra*.

E.      That the Court enter an order pursuant to 15 U.S.C. § 1117 awarding all profits received by Defendants from the sales and revenues of any kind made as a result of Defendants' sales of Accused Products and colorable imitations thereof, and damages, to be determined, that Opulent has suffered as a result of Defendants' sales and marketing of the Accused Products and colorable imitations thereof, and that damages be awarded in an amount sufficient to deter future acts of willful infringement by Defendants. In addition, Opulent reserves the right to elect statutory damages up to and including $2,000,000 per counterfeit mark pursuant to 15 U.S.C. § 1117(c).

F.      That the Court enter an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at

trial for willful copyright infringement of Opulent's Copyrights under 17 U.S.C. § 501(a).

G.     That the Court enter an order, under the common law of the State of Florida, enjoining Defendants from diluting Opulent's Designs and/or Opulent's 3D Marks.

H.     Order Defendants and Defendants' officers, agents, servants, employees, franchisees, if any, and attorneys, and all persons in active concert or participation with Defendants to identify all third parties to whom Defendants' have represented an ownership, affiliation, association, or sponsorship with Opulent's Designs or confusingly similar variations of them and to whom Defendants have distributed any type of materials incorporating Opulent's Designs or confusingly similar variations of them.

I.     Order Defendants and Defendants' officers, agents, servants, employees, franchisees, if any, and attorneys, and all persons in active concert or participation with Defendants to identify all other websites and marketing materials containing Opulent's Designs or confusingly similar variations of them.

J.     Order Defendants to immediately recall and sequester inventories of the infringing products, and provide an accounting of all sales, revenues, and profits related to Defendants' products that infringe Opulent's Designs and/or that are

falsely designated as sponsored by, approved by, affiliated with, or associated with Plaintiff.

K.      In accordance with 15 U.S.C. §§ 1117(a), 1116, and 1125(a), find this case to be exceptional in Opulent's favor and award Plaintiff its reasonable attorney's fees, costs, and expenses of this action.

L.      That the Court enter an order awarding damages and costs to the fullest extent provided for by Florida common law, including punitive damages.

M.      Awarding remuneration of Opulent's costs and expenses for Opulent to investigate, prepare and prosecute this action, including Plaintiffs' reasonable attorney's fees and costs pursuant to Fla. Stat. § 501.2105;

N.      That the Court enter disgorgement of all proceeds, and restitution of all monies received by Defendants as the result of their wrongful conduct.

O.      That the Court enter an order awarding Opulent pre-judgment and post-judgment interest.

P.      That the Court enter such other damages and relief as it deems proper and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: August 24, 2022

Daniels Rodriguez Berkeley Daniels &
Cruz, P.A.

By: /s/ Lorne E. Berkeley
    Lorne E. Berkeley, Esq
    FBN:146099
    490 Sawgrass Corporate Parkway
    Suite 320
    Sunrise, Florida 33325
    Telephone: (954) 577-8332

and

BROZYNSKI & DALTON PC

By: /s/ Katarzyna Brozynski
    KATARZYNA BROZYNSKI
    (Pro Hac Vice Application Pending)
    kasia@bdlegalgroup.com
    BART DALTON
    (Pro Hac Vice Application Pending)
    bart@bdlegalgroup.com
    5700 Tennyson Parkway, Suite 300
    Plano, Texas 75024
    Telephone:  972.371.0679

    Attorneys for PLAINTIFF
    OPULENT TREASURES, INC.